UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON BRADLEY, SR.,

        Plaintiff,

    v.                                Case No. 20-C-82

JOSEPH BEAHM, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Brandon Bradley, Sr., who is serving a state prison sentence at Columbia Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Bradley is proceeding on Eighth Amendment claims against Defendants based on his allegations that officers used excessive force when removing him from his cell twice on the same day. This matter comes before the Court on the parties' cross-motions for summary judgment and Bradley's motion for sanctions. Defendants' motion for summary judgment will be granted, Bradley's motions will be denied, and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the substance of the parties' arguments, the Court will address Bradley's motion for summary judgment, his proposed sur-reply in response to Defendants' motion, his motion for sanctions, and his failure to respond to Defendants' proposed findings of fact. As to Bradley's motion for summary judgment, the Court will deny the motion because Bradley failed to comply with the Court's local rules regarding summary judgment procedures. *See* Civil L.R.

56(b).  Bradley's motion is not accompanied by a memorandum of law and his statement of proposed material facts fails to cite to the affidavits, declarations, and other supporting materials Bradley relies on to support each fact.  While Bradley attaches documents that he captions as declarations, these documents are largely inadmissible.  Bradley notes that many of the documents are handwritten copies of original documents, *see, e.g.*, Dkt. Nos. 63 at 7; 63-1 at 1, and they frequently fail to cite to evidence supporting assertions for which the declarant lacks personal knowledge.  Finally, Bradley raises numerous issues and factual allegations that are not part of this case.  For example, Bradley notes that he is pursuing lawsuits against me, including seeking an injunction barring me from making further rulings.  Dkt. No. 63 at 8.  He also asserts that he will be seeking federal charges against Defendants for hate crimes and perjury.  *Id.*

In light of these deficiencies and irrelevant matters, the Court will deny Bradley's motion for summary judgment.  To the extent portions of his submissions are admissible, the Court will consider them in response to Defendants' motion for summary judgment.  The Court will not, however, consider Bradley's "Sur[-]reply in opposition of defendants['] motion for summary judgment" or the materials filed in support of his sur-reply. Dkt. No. 91.  Sur-replies are disfavored as they are not contemplated by the Federal Rules of Civil Procedure or this district's Local Rules.  Civil L.R. 7(i) requires that any brief not authorized by the rules be filed as an attachment to a motion requesting leave to file it.  Because Bradley did not request leave to file his sur-reply, the Court will not consider it.

The Court will also deny Bradley's motion for sanctions.  Dkt. No. 80.  It is unclear why Bradley believes sanctions are warranted.  His statement in support of his motion largely rehashes his version of the incidents at issue in this case.  Dkt. No. 81.  Bradley does state that the "person featured in defendants['] videos" is not him, but he provides no evidence to support such a fanciful

2

assertion. *See Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002) (explaining that courts need not credit assertions that are "so nutty ('delusional' is the polite word) that they're unbelievable"). The Court will deny his motion.

Finally, the Court notes that Bradley's responses to Defendants' proposed findings of fact fail to comply with the requirements in Civil L.R. 56(b)(2)(B)(i), which requires the non-moving party to respond to *each* proposed fact by either agreeing or disagreeing with the fact and, when disagreeing, to specifically reference "the affidavits, declarations, parts of the record, and other supporting materials relied upon." Bradley is well aware of this requirement. He is an experienced litigant, and shortly after Defendants moved for summary judgment, the Court entered a notice and order informing Bradley of the rule's requirements and of the consequence for failing to comply with the rule. Dkt. No. 76.

Despite this warning, Bradley chose to disregard the rule. Bradley's response to Defendants' proposed statement of facts comprises two documents: the first is a one-page document entitled "Objections," in which Bradley claims two declarations and multiple incident reports are "fabricated to delay justice, defraud plaintiff, h[i]nder investigation, improper use [sic] and are deemed FRIVOLOUS." Dkt. No. 85. The second is a one-page document entitled "Disputes" and makes the same global statement with regard to all of Defendants' proposed facts. Dkt. No. 86 at 1. This conclusory and unsupported assertion is an insufficient response to Defendants' statements of fact. Accordingly, "[t]he Court will deem [Defendants'] uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." Civil L.R. 56(b)(4). The Court will now turn to the substance of Bradley's claims.

3

## BACKGROUND

At the relevant time, Bradley was an inmate at Waupun Correctional Institution. Dkt. No. 72 at ¶1. Defendants Joseph Beahm and Joshua Bleiler worked at Waupun as Correctional Sergeants; Nicholas Sanchez was a Lieutenant; and Thomas O'Neill, Jacob Dorn, Joshua Adderton, Gregory McCawley, Cathy Barkhurst, and Stanley Ridley were Correctional Officers. *Id.* at ¶¶2, 5, 7.

### A. The June 2, 2018 Incident, First Shift

On June 2, 2018, Bradley flooded his cell in the restrictive housing unit by placing his security kilt in the toilet. *Id.* at ¶¶9, 11. Shortly before 1:00 p.m., Beahm arrived at Bradley's cell and noticed the floor was covered with water and there was a fair amount of water coming out of the cell. *Id.* at ¶11. Beahm contacted the supervisors to let them know staff would remove Bradley from his cell to clean it. *Id.* at ¶12.

Dorn and Bleiler were with Beahm, who had a privacy wrap and spit mask for Bradley. *Id.* at ¶13. In response to Beahm's orders, Bradley placed his hands out the trap door to be restrained. *Id.* After restraining Bradley, Beahm called for the door to open and gave Bradley directives to face the wall and not make any sudden movements. *Id.* at ¶14. Beahm and Dorn secured Bradley while Bleiler tried to place the spit mask over Bradley's head. *Id.* at ¶15. Bradley resisted and bit the mask, preventing it from going over his mouth, so Bleiler left to get another spit mask. *Id.* Beahm then ordered Bradley to kneel so leg restraints could be applied. *Id.* at ¶16.

Instead of kneeling as ordered, Bradley hit his head against the wall a few times. *Id.* at ¶17. Beahm ordered him to stop, but Bradley continued, so Beahm secured his head to keep him from hurting himself. *Id.* Staff assisted Bradley to a kneeling position by placing compliance holds on Bradley's wrists. *Id.* Defendants state that only a small amount of pressure was placed

4

on Bradley's wrists (by bending his wrist toward his forearm) before he complied. *Id.* at ¶¶17-18. Bleiler then arrived with the second spit mask. *Id.* at ¶19. The spit mask was placed on his face and leg restraints were applied. *Id.* Bradley was assisted to a standing position and a privacy wrap was placed around his waist. *Id.* at ¶20.

Beahm secured Bradley's head and they walked him backwards to the strip cell. *Id.* at ¶21. O'Neil took over control of Bradley's head while Beahm radioed for a supervisor and arranged for Bradley's cell to be cleaned. *Id.* at ¶22. Bradley refused medical attention, saying he felt great. *Id.* at ¶23. Bradley was eventually escorted back to his cell without further incident. *Id.* at ¶24.

### B. The June 2, 2018 Incident, Second Shift

Less than two hours later, at about 2:15 p.m., Brandon Fisher (not a defendant) went to Bradley's cell with Bleiler, Dorn, Adderton, and O'Neill to remove Bradley for a second time so his cell could be cleaned again. *Id.* at ¶31. Bradley agreed to be removed from his cell and placed his hands through the trap door so restraints could be applied. *Id.* at ¶¶32-33. Dorn informed Fisher that Bradley was trying to pull his hands back into the cell, so Bleiler and O'Neill secured Bradley's hands while the restraints were being applied. *Id.* at ¶33. Once applied, the cell door was opened and Dorn and Bleiler approached Bradley to secure Bradley's arms, but he pulled away, so they stabilized him against the wall by placing one leg to the inside of Bradley's leg and one shoulder to Bradley's shoulder blades. *Id.* at ¶34.

Fisher then ordered Bradley to remain facing forward and to kneel down. *Id.* at ¶36. Bradley refused by tensing up his body and yelling, "This shit isn't over." *Id.* at ¶35. Fisher repeated his order, and Bradley continued to refuse. *Id.* at ¶36. Fisher then directed O'Neill to secure Bradley's head, and Bradley became even more resistive towards staff. *Id.* at ¶37. Dorn

5

and Bleiler then placed Bradley's hands in a compliance hold by applying pressure to his wrist, but Bradley continued to resist. *Id.* at ¶38.

Fisher then informed Bradley that he had a taser and, if he did not kneel down and stop resisting staff, he may use it. *Id.* at ¶39. Bradley continued to resist. *Id.* Fisher unholstered the taser and held it about twelve inches from Bradley. *Id.* at ¶40. He gave Bradley another warning to stop resisting and told him to kneel down. *Id.* Bradley did not comply, so Fisher performed a test arc from the taser, cycling it for about two seconds before turning it off. *Id.* Dorn told Fisher that Bradley was using dead weight tactics. *Id.* Fisher then placed the taser about three inches away from Bradley and again told him he had a taser present. *Id.* at ¶41. He performed another test arc and watched the digital display screen count up to five seconds. *Id.* At that point, Bradley stopped resisting and kneeled down. *Id.* Accordingly, Fisher did not use the taser on Bradley. *Id.* at ¶42. Bradley stated, "I'm good, I don't want to fuck with no Taser." *Id.* at ¶43.

Adderton, who was standing by, applied leg restraints to Bradley and placed a privacy wrap around his waist. *Id.* at ¶44. Dorn and Bleiler assisted Bradley to a standing position, and Dorn, Bleiler, and O'Neill escorted Bradley backwards to a shower cell, where he was secured with a tether. *Id.* at ¶46. Bradley declined Fisher's offer to see a nurse. *Id.* at ¶47. Supervising Lieutenant David Dingman (not a defendant) then arrived to talk to Bradley while his cell was being cleaned. *Id.* at ¶48. Bradley told Dingman he would be compliant during the escort back to his cell, but, given that Bradley had spit on officers previously, Dingman decided to have staff wear protective helmets for the escort. *Id.* He also decided to have extra staff present and to video the escort. *Id.* Bradley was escorted back to his cell from the shower stall, which is about fifty feet. *Id.* at ¶53. He was compliant with the escort and the removal of his restraints. *Id.*

Dingman explains that he accidentally deleted the handheld video of the event. *Id.* at ¶57. He thought he had downloaded it, so he deleted it, only to later discover that it had not properly downloaded. *Id.* Dingman then downloaded as much camera footage from the hallway cameras as he could to show as much of the incident as possible. *Id.* at ¶58.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Under the Eighth Amendment, correctional officers violate an inmate's constitutional rights "when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808

7

F. App'x 378, 382 (7th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "Whether a guard applies force in good faith to resolve a disturbance or, rather, maliciously with intent to cause harm, turns on factors including the threat reasonably perceived by the guard, the need for and the amount of force used, and the injury suffered by the prisoner." *Boyd v. Pollard*, 621 F. App'x 352, 355 (7th Cir. 2015).

As noted, Bradley did not dispute Defendants' version of what occurred, so their version is accepted as true for purposes of summary judgment. Defendants explain that, while Bradley generally complied with staff's orders, he had periods of non-compliance. For example, during the first removal, Bradley banged his head against the wall, which necessitated Beahm restraining his head for his own safety. He also initially refused to kneel so leg restraints could be applied, which resulted in officers applying a small amount of pressure to Bradley's wrists via the use of a compliance hold. Defendants assert that, once Bradley complied and began to kneel, they stopped applying pressure. Similarly, during the second removal, when Bradley refused to comply with orders to kneel and stop resisting, officers stabilized him against the wall and Fisher warned him twice that he could use his taser. Fisher cycled the taser to make sure Bradley knew the consequence of continuing to resist. After the second cycle, Bradley stopped resisting, so Fisher did not use his taser. Beahm denies that he ever groped Bradley, and Defendants explain that at no time did anyone punch, kick, knee, elbow, or otherwise physically attack Bradley. Bradley did not request medical care in connection with either removal.

Based on this record, no jury could reasonably conclude that Defendants maliciously and sadistically used force against Bradley to harm him. To the contrary, the only reasonable conclusion is that the limited and minimal force Defendants used while removing Bradley from

8

Case 1:20-cv-00082-WCG   Filed 02/08/21   Page 8 of 11   Document 101

his cell was necessary in the face of Bradley's assaultive and aggressive behavior toward both himself and staff.

The Court observes that in response to Defendants' motion, Bradley submitted an unverified statement of proposed facts in which he asserts that, during the first removal, Beahm "groped [his] nude body and Beahm, Dorn, Bl[eil]er, O'Neill, [and] McCawley began to punch, kick, knee, elbow, [and] slap [him] while he was tethered to the door." Dkt. No. 83 at ¶4. He also states that he was "dragged nude down the hall to the strip cage where [he] was punched, kicked, kneed, elbowed, slapped, and slammed face first into the cage door." *Id.* at ¶5. Bradley states that, during the second removal, Bleiler, O'Neill, and Dorn attacked him "with punches, kicks, knees, elbows, [and] slaps" and "Fisher tazed [him] twice." *Id.* at ¶10. According to Bradley's amended complaint, Defendants treated him this way because he had discovered that Beahm had assisted in the death of another inmate. Dkt. No. 25 at 3. Bradley asserts that Beahm told him he had better "keep [his] mouth shut" or he would "kill [him] too and eat cheesecake off [his] dead body" as he had done with the deceased inmate. *Id.*

Even if the Court had considered these statements in response to Defendants' motion, they would have been insufficient to create a triable issue of fact. Hallway camera footage captured much, though not all, of the parties' interactions that day. The video corroborates Defendants' version and undermines Bradley's. Bradley knows this, so in an attempt to get around the video evidence, he asserts that Defendants fabricated the video and that the person featured in the video is not him. These assertions, much like his allegations that Beahm had participated in another inmate's death and threatened to eat cheesecake off of Bradley's dead body, are so fanciful and farfetched that the Court cannot credit them. The Seventh Circuit has made clear that courts need not suspend reality when considering a non-moving party's assertions. *Gladney v. Pendleton*

9

Case 1:20-cv-00082-WCG    Filed 02/08/21    Page 9 of 11    Document 101

*Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002). Particularly when, as here, the plaintiff provides no evidence to support his outlandish claims.

The Court acknowledges that the available video footage does not show the entirety of the parties' interactions and that much of Bradley's assertions about Defendants' behavior occurs in his cell, not in the hallway. But throughout the available video footage, Defendants remain professional, and their facial expressions and body language are controlled while they perform their duties. Nothing suggests that Defendants violently attacked Bradley just prior to transporting him through the hallway. Bradley's claims to the contrary are further undercut by the fact that he declined offers for medical care after the removals. As the Seventh Circuit has explained, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see Boyd v. Pollard*, 621 F. App'x 352, 355 (7th Cir. 2015) (finding that where a factfinder has video showing a prison official's conduct was proper for part of an incident, the factfinder can reasonably infer that the prison official's conduct was proper for the entire incident).

Finally, Bradley's reliance on another inmate's account of what occurred that day also fails to create a triable issue. *See* Dkt. No. 84. The inmate explains he was housed on the floor below Bradley's cell and that he and Bradley frequently talk through the vents. He asserts that, on the day in question, he heard Defendants enter Bradley's cell and beat him, including punching, kicking, and tasing him. The inmate says he heard Bradley being dragged down the hallway and beat again. Bradley then told him everything that had happened after he was returned to his cell. The inmate does not explain how he knew which officers had entered Bradley's cell or how he could have heard anything once Bradley was removed from his cell and dragged fifty feet down a

hall on the floor above. The only reasonable conclusion is that the inmate is relying on Bradley's account of what happened, not on his own observations. Thus, the inmate's affidavit is inadmissible hearsay, and the Court will not consider it.

Because Bradley fails to create a triable issue of fact regarding whether Defendants used excessive force when removing him from his cell, Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 70) is **GRANTED**. Bradley's motion for summary judgment (Dkt. No. 63) and his motion for sanctions (Dkt. No. 80) are **DENIED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of February, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.